

Attorneys At Law
www.margolisedelstein.com

**NORTH NEW JERSEY OFFICE:**
**Connell Corporate Center**
**400 Connell Drive**
**Suite 5400**
**Berkeley Heights, NJ 07922**
**908-790-1401**
**Fax 908-790-1486**

SOUTH NEW JERSEY OFFICE:*
100 Century Parkway
Suite 200
Mt. Laurel, NJ 08054
856-727-6000
Fax 856-727-6017

PHILADELPHIA OFFICE:*
The Curtis Center
170 S. Independence Mall West
Suite 400E
Philadelphia, PA 19106-3337
215-922-1100
Fax 215-922-1772

HARRISBURG OFFICE:*
3510 Trindle Road
Camp Hill, PA 17011
717-975-8114
Fax 717-975-8124

PITTSBURGH OFFICE:
522 William Penn place
suite 3300
Pittsburgh, PA 15219
412-281-4256
Fax 412-642-2380

SCRANTON OFFICE:
220 Penn Avenue
Suite 305
Scranton, PA 18503
570-342-4231
Fax 570-342-4841

DELAWARE OFFICE:
750 Shipyard Drive
Suite 102
Wilmington, DE 19801
302-888-1112
Fax 302-888-1119

*Member of the Harmonie Group

VICTORIA J. ADORNETTO, ESQ.
Direct Dial No.: 908-790-7774
vadornetto@margolisedelstein.com

October 13, 2014

<u>Electronically Filed</u>
Hon. Mark Falk, U.S.M.J.
United States Post Office & U.S. Courthouse
2 Federal Square, Courtroom 09
Newark, New Jersey 07102

Re:     Gillon and IGMC v. Bernstein
         Our File Number: EJM/VJA / 54900.5-00003
         Docket Number: 12-CV-4891-WJM-MF

Dear Judge Falk:

       We represent Defendant, Honey Bernstein, in the above-captioned matter. Kindly accept this correspondence as follow-up to our letter dated October, 1, 2014 (docket entry 39), renewing an earlier request seeking leave to pursue discovery-related motion practice.

       Unfortunately, as further outlined herein, Plaintiffs' pattern of non-compliance with applicable Rules and Orders of this Court have continued. <u>See</u>, docket entries 36 and 39. Accordingly, there are now additional items that will require discussion at the upcoming October 23, 2014 conference. <u>See</u>, October 9, 2014 Order (#41 on the docket).

       Specifically, pursuant to Your Honor's July 9, 2014 Order (#29 on the docket), fact discovery was extended "one final time to September 2, 2014" for which the Order unequivocally stated "there shall be no further extensions." Additionally, Plaintiffs were to serve affirmative expert reports no later than October 10, 2014. In addition to the violations already brought to the Court's attention via docket entries 36 and 39, Plaintiff has again violated the July 9, 2014 Order in multiple ways:

*Untimely "Expert" Reports*:

       Plaintiff served no expert reports by the aforementioned October 10, 2014 deadline.

       On behalf of Defendant, we hereby seek leave of Court to file an

Page 2                                October 13, 2014
Re: Gillon et al. v. Bernstein
Our File No.: EJM/VJA / 54900.5-00003 / 331496139

appropriate motion to strike and bar any expert from testifying at the time of trial, whose report was served out-of-time. This includes purported "expert" reports Plaintiffs' counsel served today, October 13th, via e-mail, unilaterally seeking to absolve non-compliance with the Court-imposed deadline in connection with his "religious observance of Sukkot" on October 10, 2014. **Exhibit A**.

The Federal Rules of Civil Procedure clearly delineate how time is to be computed, and discuss how computation of time is impacted if a deadline should fall on a weekend or "legal holiday." Fed. R. Civ. Pro. 6(a)(1). The religious holiday counsel relies upon in effort to unilaterally absolve untimely service of expert discovery does not fall within the clearly defined "legal holidays" specified in Fed. R. Civ. Pro. 6(a)(6). Respectfully, counsel's observation of a religious holiday on the date of a Court-imposed deadline certainly was neither an unexpected nor unforeseen event that Plaintiffs' counsel could not have planned for in advance. Plaintiffs failed to make any request that the Court extend time for service of Plaintiffs' expert reports, in advance of expiration of the deadline. Fed. R. Civ. R. 6(b)(1); Local Civ. R. 6.1(a). Notably, with respect to the missed deadline, Plaintiffs took no affirmative action, such as seeking leave, extension or relaxation from the Court whatsoever; the missed deadline was just casually noted within today's e-mail to defense counsel as if missing a deadline is of no importance. Particularly in view of the discovery history in this matter, Defendant respectfully submits that enforcement of the Court's directives within the July 9, 2014 Order is reasonable, and Plaintiffs are to be bound by the effects of non-compliance.

Additionally, Defendant also expressly seeks leave of Court to file a motion to strike the "export" reports Plaintiffs served out-of-time and bar those individuals from testifying at the time of trial, as inadmissible net opinions.

Within Plaintiffs' October 13, 2014 e-mail transmittal, counsel advised he was serving "Plaintiff's expert reports regarding business loss and medical testimony." **Exhibit A**. We have attached hereto, as **Exhibit B**, the purported economic report prepared by Shane McMurray, and, as **Exhibit C**, the purported "medical" report prepared by Dr. Stuart G. Rasch.

While we will not belabor the objections and deficiencies of the Plaintiff's purported expert reports, as we seek leave to file an appropriate motion on the subject, by way of brief presentation, the "business loss" report has been prepared by the president of a company that simply publishes a website, www.weddingreport.com, that "collects [] detailed statistics on spending in the wedding industry" generally, without inclusion of any curriculum vitae. **Exhibit B**, p.1. There is absolutely nothing provided by this individual that would even lead one to believe he has either knowledge, skill, experience, training and/or experience to even qualify as an expert in this matter. See, Exhibit B. Mr. McMurray simply relies upon his own website, and "review" of nothing other than the posting in issue and Plaintiff's "Profit & Loss statements for the years 2007-13 and a summary of her Band and Catering sales since 2004", to present an opinion that since Plaintiffs' decreases in profits were inconsistent with general stability in the industry at large, the Internet posting of August

Page 3                                                                October 13, 2014
Re: Gillon et al. v. Bernstein
Our File No.: EJM/VJA / 54900.5-00003 / 331496139

9, 2011 caused Plaintiffs' decrease. **Exhibit B**, p.1. There are no mathematics reflected to show how he arrived at any monetary conclusion as to losses attributable to the posting; and there is no discussion as to whether and to the extent the methodology he uses (i.e., simple comparison of a profit and loss statement without so much as a glance at company expenses, discussion with company principal or employees about any change in business practice(s), etc., to general industry statistics) and that the facts and data he relied upon, are of the type reasonably relied upon by experts in the particular field (whatever that may be) in forming opinions or inferences on the subject. Clearly, this individual has based his opinion on nothing more than his own personal standards and impressions, which is impermissible. The writing is a classic inadmissible net opinion, and we seek leave to bar this purported opinion on those grounds accordingly.

Additionally, as the Court is aware, Plaintiffs have failed to honor affirmative discovery-related representations repeatedly made before this Court, including as most recently as at the time of the September 18, 2014 conference, and have violated the provisions of the Order (docket entry 40) resulting from that conference. Among the violations, was Plaintiffs' failure to serve full and complete copies of its books and records with all supporting materials, full and complete bank account statements, full and complete tax filings, and all documents reflecting Plaintiffs' purchase and maintenance of domain names and web sites, 2005-present, for calendar years 2005 through the present. See, docket entry 39 and Exhibit C thereto. Notably, Plaintiffs omitted from the limited materials that even were produced, a single responsive document dating to either 2005 or 2006. As pertains to the company books and records, there was no explanation articulated at all as to why those materials were omitted as to those years. See, docket entry 39 and Exhibit B #3 thereto. Remarkably, Mr. McMurray memorialized that he was given and reviewed materials pertaining to Band and Catering sales of IGMC dating back to 2004! **Exhibit B**, p.1. From Defendant's perspective, this just highlights and reiterates Plaintiffs' unreasonable discovery conduct in this matter. Defendant's request for leave of Court to file a motion to bar Plaintiff's claim for lost earnings or loss of business claims remain pending.[1]

As pertains to the "report" of Dr. Rasch (**Exhibit C**), this is also very clearly an inadmissible net opinion, for which we seek leave to strike and bar. First and foremost, although the writer is a physician, as reflected within his "report", he has never examined Plaintiff Gillon, has never formally treated Ms. Gillon, has reviewed no medical records of any care or treatment she had pursued from any treatment provider whatsoever following the posting in issue, has made to diagnoses of Plaintiff Gillon's conditions, and per his own admission, is simply a friend; not a treating physician or a physician who has performed an independent medical evaluation pursuant to Fed. R. Civ. Pro. 35.

---

[1] Defendant's request seeking leave to also pursue dispositive motion practice to dismiss all claims for consequential and punitive damages founded upon allegations of loss of business, lost wages, and/or lost profits, as well as to move for imposition of sanctions for the impermissible interference with a properly served and issued Subpoena upon a non-party, also remain pending, and are believed to be on the agenda for discussion at the time of the October 23, 2014 conference.

Page 4                                                                                          October 13, 2014
Re: Gillon et al. v. Bernstein
Our File No.: EJM/VJA / 54900.5-00003 / 331496139

Dr. Rasch simply says "over the years" Plaintiff has discussed various things with him, as a friend that happens to be a physician, including "in the past few years...while we did not specifically talk about the details regarding her stress, she did mention to me her struggle against an unknown person who was making defamatory content and a cyber bullying incident against her." **Exhibit C**, p1. Dr. Rasch cannot even so much as state when these conversations occurred. As reflected in the record in this matter, Defendant Bernstein is neither the first nor the only individual to articulate dissatisfaction with Plaintiffs' work product. Dr. Rasch knows so little about the matter, that he cannot even articulate whether the "unknown person" about which Plaintiff spoke is even Defendant Bernstein. Moreover, Dr. Rasch's generalized description of Plaintiff's physical ailments over a 35-year period, without providing any temporal context for any of her supposed conditions, coupled with such a vague conclusion that cannot even pinpoint how/why those conditions could have been impacted referable to the "unknown person" of any unknown nature and time, is clearly a net opinion.

*Identification of New Fact Witness Grossly Out of Time*:

As noted at the outset, the July 9, 2014 Order (#29 on the docket), set a fact discovery deadline of September 2, 2014. The sole adjustments to that Order were the limited provisions set forth within the Court's October 1, 2014 Order. (#40 on the docket).

Within today's e-mail Plaintiff's identified a new witness, Mike Roemer, described as "a witness who will testify to his experience as a victim of Ripoff Report." **Exhibit A**. This person is clearly not an expert, but a fact witness. Plaintiffs' identification of this new fact witness is grossly out-of-time and must be barred, as the time period for Defendant to depose this individual has passed and will be precluded, depriving Defendant her right to confront witnesses. Moreover, Ripoff Report is not a party to this action. Defendant objects to the testimony of Mr. Roemer, on the grounds of relevance. There is no contention that Mr. Roemer has ever had any experience, interaction, or connection to any party in this case. An anecdote about personal experience of a completely unrelated individual, with no personal knowledge about the facts of this case, with a non-party, is evidential of nothing.

As set forth above, on behalf of Defendant, in addition to the request seeking leave to pursue motion practices as presented on October 1, 2014, in view of the foregoing events, Defendant also requests leave of Court to file motions to strike the reports and bar the testimony of Shane McMurray and Dr. Stuart G. Rasch, on the grounds of untimeliness and as inadmissible net opinions, and to move to strike and bar any testimony of Mike Roemer, on the grounds of untimeliness and relevance.

We will be prepared to further discuss these matters at the upcoming October 23, 2014 conference.

Page 5                                                                                           October 13, 2014
Re: Gillon et al. v. Bernstein
Our File No.: EJM/VJA / 54900.5-00003 / 331496139

    We thank the Court for its kind courtesies.

                      Respectfully Submitted,

                      MARGOLIS EDELSTEIN

        By: _____
                      VICTORIA J. ADORNETTO (VA4705)
                      vadornetto@margolisedelstein.com

cc:    M. Ari Jacobson, Esq. (Via electronic filing)
       Emery J. Mishky, Esq.

# EXHIBIT A



# Plaintiff's experts

**Ari Jacobson** <arijacobsonlaw@gmail.com>  Mon, Oct 13, 2014 at 10:24 AM
To: Emery Mishky <emishky@margolisedelstein.com>, Victoria Adornetto <vadornetto@margolisedelstein.com>, Victoria Adornetto <mschirripa@margolisedelstein.com>

Dear Mr. Mishky & Ms. Adornetto:

Attached please find Plaintiff's expert reports regarding business loss and medical testimony. Please excuse my not sending them on Friday the 10th, as our office was closed due to the religious observance of Sukkot.

Below is name of a witness who will testify to his experience as a victim of Ripoff Report. (No expert letter is needed for this witness.)

Mike Roemer
South Shore Lasers
98 East Main St
Babylon NY
631-482-8913
www.southshorelasers.com

--

Ari Jacobson, Esq.
Law Offices of M. Ari Jacobson
1029 Teaneck Road, Suite 2D, Teaneck, NJ 07666
38 W. 32nd Street, Suite 1110, New York, NY 10001
www.arijacobsonlaw.com - arijacobsonlaw@gmail.com
T. 201-808-6529 (8086-LAW) - F. 201-357-8779
Legal documents must be mailed using NJ address.

Admissions) States: NY, NJ, MA. Fed.: SDNY, EDNY, NJ -- CONFIDENTIAL / PRIVILEGED: unauthorized viewing or use prohibited; inform sender if received in error. DISCLAIMERS: This is not legal advice unless you have signed a retainer agreement. Unless expressly indicated, this is not a formal legal opinion nor tax advice (Cir.230). Sender not responsible for forwards or viruses.)

---

**6 attachments**

- **Shane McMurray letter.pdf**
  649K
- **Wedding Report - US.pdf**
  474K
- **Wedding Report - NY metro.pdf**
  482K
- **2013 Wedding Market Review.pdf**
  725K
- **Dr Rasch expert letter.pdf**
  105K
- **Dr Rasch - Resume.pdf**
  214K

# EXHIBIT B

10/8/2014

My opinion is that the decrease in Iris Gillon / IGMC's business was caused by the defamatory posting.

I am the CEO of The Wedding Report, Inc. Our company collects and publishes detailed statistics on spending in the wedding industry. The basis for my opinion is my familiarity with these reports, included, but not limited to The Wedding Industry Report - United States, and The Wedding Industry Report - NY Metro Area. These show total spending on weddings nationally in 2008 of $52 billion, decreasing to $46b. in 2009, the first year of the recession. In 2010 spending rebounded to $55b., and has remained at that level +/- $1b in 2011-13. The methodology for our data collection is explained in our report.

In the NY Metro area, spending in 2008 was $3.9 billion, decreased in 2009 to $3.5b., increased in 2010-13 to between $4.2b. and $4.5b.

I reviewed IGMC's Profit & Loss statements for the years 2007-13 and a summary of her Band and Catering sales since 2004. I also viewed the defamatory posting on the Ripoff Report website and the listing of this posting in the top 5 of Google results for IGMC.

The posting was August 9, 2011. Therefore, I would expect the loss of business to show primarily starting in 2012, as events are reserved many months in advance (however, since IGMC fees are collected in the deposits of her band-sales, some of those may have started to show up in the last quarter of 2011). Indeed, her Band sales from 2004-7 were between $114-137,000, increased to $225-230,000 for 2007-8, and had the industry-wide drop down to 151,000 in 2009. (All numbers rounded down to the nearest thousand.) She grossed 199,000 and 168,000 in 2010 & 2011. But in 2012, her sales plummeted to 65,000, a decrease of 61%. In 2013, the number were 91,000, 45% below the year prior to the defamation.

A more dramatic decrease occurred in her catering & venue sales, which dropped from $52,000 in 2011 to just 14,000 and 5,000 in the years after the defamation.

These decreases cannot be accounted for by changes in the wedding industry, either nationally or locally. Nor by changes in these sub-areas of wedding spending, which were stable as shown the attached Wedding Industry Report.

Internet research is increasingly central to couples. Their use of the internet to plan rose from 77% in 2006 to 85% in 2013. Internet wedding spending has likewise increased from $6.0 - $6.3b. in 2009-10, to $8.0 - $8.8b. in 2011-13.

A single negative report that appears prominently in Google Search will cause couples to bypass that vendor to seek another.

I have viewed IGMC.net, which, in my experience in the Online Wedding Market, is a professional and suitable site.

It is my conclusion that the prominence of the Bernstein posting has caused and will continue to cause significant injury to IGMC's business, in the amount of $250,000-$300,000 gross collected commissions on band and catering sales, and a personal income loss for Iris Gillon after re-investing her commissions into her company of $100,000-$110,000 year.

My publications include the below and numerous similar ones:
2014 Q2 Wedding Cost Update, 2014 Q1 Wedding Cost Update, The Online Wedding Market 2013 Report, 2013 Wedding Market Review, 2014 Wedding Market Insight Report, 2014 Wedding Market Insight Report, Engagement & Wedding Ring Report 2013, Destination Weddings 2013, A Look at

Wedding Photography Services & Styles Desired by Couples 2009 to 2013, How Many Couples Cancel Their Wedding, A Look at Gown Preservation Purchases, The 2013 (Thirteen) Factor, Photo Booth – Importance of Print, Online, vs. CD, The Online Wedding Market 2012 Report, What Brides Think About the New Fall PANTONE Colors, A look at Wedding Party Size, Online Use and Wedding Websites Used, A look at DIY

I have not testified as an expert witness within the past 4 years. I am being paid $300 for this letter. Fees for further appearances have not been set.

My opinion is stated to a reasonable degree of certainty within my profession.

Shane McMurray
CEO & Founder, The Wedding Report, Inc.

*[signature]* 10/8/2014

# EXHIBIT C

**Stuart G. Rasch, MD**
40 Sickletown Road
Pearl River, New York 10965
(845) 735-6603
sgrasch@optonline.net

October 10, 2014

TO WHOM IT MAY CONCERN:

    I have been asked by Iris Gillon, to testify on her behalf in a court action, she has consulted me over the past 35 years for various ailments, and I have been a friend of her's and her family for the past 35 years. We first met in College and continued to be friends through my medical school and residency years. She has given consent to have me write this letter.

    While she was living in New York City, she frequently consulted me and asked my advice, regarding treatment for her uterine fibroids, as well as occasional headaches. In the past several years, when she moved to Teaneck NJ, near to Holy Name Hospital, to which I was affiliated, I had had the occasion to consult with her regarding a cornucopia of illnesses, many of which are stress induced or most certainly aggravated by stress and anxiety

    She consulted me regarding episodic palpations, with intermittent chest pain and shortness of breath, which upon investigation and subsequent hospitalization was determined to be paroxysmal atrial fibrillation, her headaches, which initially were very occasional and mostly related to severe menstrual issues, became more frequent and severe to the level of migraine, which is unusual, it is much more common for these to resolve in post menopausal woman

    She developed urticara, and despite testing, the cause was not determined, and I can confidently diagnose the cause of these skin rashes being stress. Muscular complaints were also increased in this time, bordering on a diagnosis of fibromyalgia, with the frequency and severity of the symptoms. (Fibromyalgia is known to be triggered and aggravated by emotional stress as one of the main causes)

    Over the years, Iris has discussed with me several business endeavors, and how happy she was with one or another of these activities. I had come to note in the past few years that her calls to me for help increased substantially and her work seemed to be much more stressful, while we did not specifically talk about the details regarding her stress, she did mention to me her struggle against an unknown person who was making defamatory content and a cyber bullying incident against her.

I am aware that for Iris Gillon and her business activities, her reputation is crucial for survival. Her business is related to word of mouth and her reputation is based on her accomplishments. It is my professional opinion, to a reasonable degree of medical certainty, that her medical ailments have been either caused by, or aggravated by her emotional stress, related to in part, her loss of income, and degradation of her reputation. Please note, I have not been compensated for this opinion, and have never charged Iris for my consultations, which have been done based on my knowledge of her medical conditions, and more recently, because of her lack of finances and insurance coverage in part due to the above actions. I do not make it a habit to testify in court cases, but have been an expert witness in criminal cases in New York State, at the request of the local District Attorney. I have not testified in civil cases in over 10 years.

Sincerely yours,

Stuart G. Rasch, MD